

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**
**ATTORNEY GENERAL**

Honorable J. A. McDonald
Commissioner of Agriculture
Austin, Texas

O-6254

Dear Sir:

Opinion No. O-6254
Re: Authority of Commissioner
of Agriculture to require
surety bond of cotton growers
in Regulated Areas under Pink
Bollworm Law. Also related
question.

Your recent communication to this department reads,
in part, as follows:

"Pursuant to our conversation in your office
a few days ago regarding the Pink Bollworm situation
in Texas, I am writing you for an opinion of your
office on several specific points that I assure you
will be most valuable to us.

"I am enclosing for your reference a copy of a
recent decision from the Court of Criminal Appeals
involving the Pink Bollworm Law, Volume 1, Chapter
3, Title 4, of the Revised Civil Statutes of Texas,
1925. I am, also enclosing a copy of the rules and
regulations promulgated by this office in connection
with the enforcement of the above mentioned law for
your perusal.

"As I stated to you in our conversation, the
Federal authorities, who are cooperating with us in
this work as well as directing the operations of a
similar Federal quarantine, intended to assist in
preventing the spread of this pest from infested
territory to uninfested territory are in accord
with me that the present program is not strong
enough to stop the spread of the worm, and unless
something more intensive and drastic is done, it

...CATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable J. E. McDonald, page 2

is quite apparent that the Pink Bollworm will dis-
seminate itself over the entire cotton belt in the
same way that the bollweevil did thirty-five years
ago.

"The particular emergency that has arisen that
has brought about this crisis is the recent infesta-
tion in the Lower Rio Grande Valley of Texas where
the climatic conditions are such that cotton grows the
entire year and continues to fruit unless intensive
measures are taken toward destroying the stalk and
plowing the fields in such a way as to kill the cot-
ton and, thus, prevent a perpetual development of
the insect.

"We are convinced that if cotton is to be allowed
to be grown in this area, the fields must be cleaned up
of cotton stalks by September 15 of each year if pest
spread is to be prevented. We have tried every con-
ceivable plan of having this field cleaning program
enforced, and it is very evident that nothing short
of requiring a bond guaranteeing that the fields will
be cleaned of cotton by the date set as a prerequi-
site to the issuance of a permit to grow cotton in
this area will do the job.

"We understand from our interpretation of the
Decision of the Court of Criminal Appeals on this sub-
ject that any cotton planted in a "Regulated Area" with-
out a permit from the Commissioner of Agriculture is
"illegal cotton" and as such when it is grown is prima
facie evidence as a violation of the basic law. In
light of this decision, is this office authorized to
require a surety bond guaranteeing such compliance
by the grower as a prerequisite to grow cotton and
can the bond be made subject to forfeiture if the
agreement is not carried out?

"Our second question is, in the event that such
bond is authorized, is it possible that the funds re-
covered from such bond could be used for expenses in
destroying such "illegal cotton" with or without con-
sent of the owner of the land?"

Honorable J. S. McDonald, page 3

The Pink Bollworm Law is embodied in Articles 68 to 82, both inclusive, V. A. C. S., and Article 1034, Penal Code of Texas. Its enactment was clearly an exercise of the police power of the State. Williams v. State, 176 S. W. (2) 177. Broadly speaking, such sovereign power of the State is its law of self-defense, regarding both persons and property. Carstens v. De Sellem (Sup. Ct. of Washington) 144 Pac. 934. The legislative history of this Pink Bollworm Law is set forth in the Civil Appeals case of Kilpatrick, et al, v. Compensation Claims Board et al, 259 S. W. 164.

Under Article 71, V. A. C. S., if the report of the Pink Bollworm Commission "indicates that it will be safe to grow cotton under rules and regulations within such zone adjacent to the infestation outside of Texas, the governor shall thereupon issue his proclamation declaring it unlawful to grow cotton within such area as may be recommended by the Pink Bollworm Commission, except under such rules and regulations as the Commissioner of Agriculture shall promulgate." (Emphasis ours.)

Article 74, V. A.C. S., provides in part as follows:

"Should the report of the Pink Boll Worm Commission express the conclusion that it will not be dangerous to the cotton industry of Texas to permit the growing of cotton within such district (as thereinbefore determined by said Commission) under such rules and regulations as it shall be adequate to prevent the spread of the pink boll worm, the Governor shall proclaim such area as may be set out in the report of the Pink Boll Worm Commission a regulated zone, in which it shall be unlawful to plant, cultivate and market cotton except under such rules and regulations as shall be promulgated therefor by the Commissioner of Agriculture, which may include the planting of seed from non-infested territory, ginning at designated gins, milling or disinfecting of all seed products within such zone marketing, cleaning of fields, and such other rules as may be found necessary; . . . ." (Emphasis ours.)

Honorable J. E. McDonald, page 4

The general rule is that the functions of legislation may not be delegated by the legislative to the executive department or to any officer or officers thereof. "But while the legislature may not delegate power to make law, it may vest a large measure of discretionary authority in officers charged with the administration of the laws. - - Especially may the legislature authorize the administrative officer or body to make rules and regulations relating to the administration or enforcement of the law." 12 C. J. 844, 845, par. 329.

"The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation. Locke's Appeal 72 Pa., 498, 13 Am., Rep. 716."

Any rules and regulations made under such delegated power must be reasonable and within the scope of the authorizing statute. U. S. v. Pennsylvania Company, 235 Fed. 961.

In King v. Concordia Fire Insurance Co., 140 Mich. 258, 103 N. W. 616, 6 Ann. Cas. 87, it was said:

"Was the power (to create or draft a form of fire insurance policy) which this statute delegated to the insurance commission legislative in character? It certainly was a power which the legislature itself might rightfully exercise, but it does not follow from this circumstance that it was a legislative power, for the Legislature often exercises powers of an executive or administrative character which it may delegate . . . The proper distinction between such delegated power and legislative power is stated in Locke's Appeal, 72 Pa. 498 (13 Am. Rep. 716) as follows: 'The Legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.'. . .Tested by this distinction, the authority delegated to the insurance commission by the legislation under consideration was not administrative, but was legislative. It cannot be said that the Legislature merely delegated to the commission power to determine a fact or state of things upon which the law makes, or intends to make, its own action depend;

Honorable J. E. McDonald, page 5

nor, that it merely delegated to the Commission
discretion as to its execution to be exercised
under and in pursuance of the law. On the con-
trary, it delegated to the Commission authority
to itself make the law (which was to be evidenced
by the form of the insurance policy filed with
the Commissioner of Insurance), and to change this
whenever they shall deem it necessary."

This Concordia Fire Insurance case is cited in the
case of St. Charles State Bank v. Wingfield, 36 S. D. 493, 155
N. W. 776, which, in turn, is cited in 12 C. J. 846, under the
paragraph "Inspection." Also see 6 R. C. L. pp. 166 to 180,
and Cooley's Constitutional Lims., par. 143. Also, Balch v.
Glenn (Sup. Ct. of Kan.) 85 Kan. 735, 119 Pac. 67.

In view of the foregoing authorities and fundamental
principles, it is obvious that the Commissioner of Agriculture
has no power, under the present law, to require a surety bond
as a prerequisite to grow cotton in regulated areas. Such
power is clearly legislative in character, and can only be ex-
ercised by the Legislature itself. It is not a subject of in-
quiry and determination outside of the halls of legislation.
It is a matter easily within the knowledge of the law-making
power, and is subject to the legislative will. Until such a
bond is required by the Legislature in a specified manner, and
its terms and conditions are fixed thereby, your first question
must be answered in the negative. This conclusion makes un-
necessary a consideration of the second question submitted.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By L. H. Flewellen
Assistant

LHF:zd

APPROVED NOV 18 1941

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN